UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STANLEY L. SIM, JR.,

      Plaintiff,

v.                                          Case No. 3:14-cv-392-J-34PDB

P. MARCEUS, et al.,

      Defendants.
_____

## ORDER

### I. Status

Plaintiff Stanley L. Sim, Jr., an inmate of the Florida penal system, initiated this action on April 7, 2014, by filing a Civil Rights Complaint Form (Doc. 1) pursuant to 42 U.S.C. § 1983. He filed an Amended Complaint (Doc. 6) on June 3, 2014, and a Second Amended Complaint (SAC; Doc. 16) on November 24, 2015. In the SAC, Sim names the following individuals as Defendants: (1) Dr. P. Marceus; (2) Dr. J. Kleinhans;[1] (3) Mrs. Liockkis, a nurse; and (4) Kirk Laneve,[2] a physician's assistant. On February 23, 2017, Dr. Marceus, Dr. Kleinhans, and Mrs. Liockkis were dismissed from this action. See (Doc. 39).

This matter is before the Court on Defendant Kirk Laneve, PA-C's Motion to

---

[1] The proper spelling of Defendant's surname is Kleinhans. See Return of Service (Doc. 18), filed June 23, 2016.

[2] The proper spelling of Defendant's surname is Laneve. See Form USM-285, Process Receipt and Return (Doc. 35), filed January 5, 2017.

Dismiss Plaintiff's Second Amended Complaint (Laneve's Motion; Doc. 38). The Court advised Sim that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, see Order (Docs. 17), and when Plaintiff initially failed to respond to Laneve's Motion, gave him an additional opportunity to respond. See Order (Doc. 40). On April 17, 2017, Plaintiff filed a response in opposition to Laneve's Motion. See Motion Showing Cause Why Assistant Kirk Laneve Should not be Dismissed From the Action (Response; Doc. 41).

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v.Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see Miljkovic v.Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (citation and footnote omitted). A

2

"plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

The Eleventh Circuit has stated:

> To survive a motion to dismiss, [plaintiff]'s complaint must have set out facts sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This means he must have alleged "factual content that allow[ed] the court to draw the reasonable inference that the defendant[s] [were] liable for the misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be plausible, but plausibility is not probability. See id.

Lane v. Philbin, 835 F.3d 1302, 1305 (11th Cir. 2016).

### III. Second Amended Complaint[3]

Sim asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they denied him proper medical care for his right

---

[3] The SAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d at 1297 (quotations and citations omitted). As such, the recited facts are drawn from the SAC and may differ from those that ultimately can be proved.

shoulder. According to Sim, Sergeant Jensen, a housing officer, escorted him to the medical clinic at Columbia Correctional Institution Annex (CCIA) on May 5, 2013, at approximately 2:40 a.m., due to his complaints of a right shoulder injury. See SAC at 5. At the clinic, Mrs. Liockkis refused to order security personnel to transport Sim to an outside hospital, but instead took Sim's temperature, checked his pulse, and directed that he return to his cell and report to the clinic to see a doctor at 8:00 a.m. See id. at 5-6. Sim returned to the medical clinic that same morning at 8:30 a.m., and Dr. Marceus examined Sim's shoulder, ordered x-rays, and directed security personnel to return Sim to his cell. See id. at 6. On July 3, 2013, the Florida Department of Corrections (FDOC) transported Sim to the Reception and Medical Center (RMC) to see Dr. Kleinhans, who advised that he would perform surgery on Sim's shoulder. See id. Dr. Kleinhans performed surgery on July 8th at the RMC, and the FDOC returned Sim to CCIA where he complained to the medical staff about post-surgical pain. See id.

On October 14, 2013, the FDOC returned Sim to RMC where Laneve examined him and ordered x-rays, which showed dislodged screws in Sim's shoulder, prompting Laneve to order another surgical procedure. See id. The FDOC transported Sim to Jacksonville's Memorial Hospital for surgery on December 2, 2013. See id. Sim later discovered that Dr. Kleinhans removed the plate from his shoulder, but "the problem [with the shoulder] was not corrected." See id. at 6-7. When the FDOC returned Sim to RMC, he was given no post-operative orders for pain medication or physical therapy. See id. at 7. Sim asserts Laneve acted with deliberate indifference "due to his continual delay of surgery once he saw alone (sic) with the plaintiff on [October 14, 2013] the return of the x-ray's he order to be taken showed that the screws in the plaintiff (right) shoulder had

4

become dislodged an[d] was causing great pain to him." Id. at 7-8.

## IV. Law and Conclusions

Laneve seeks dismissal of Sim's Eighth Amendment claim against him because Sim "fails to allege sufficient factual allegations supporting a cognizable claim against [him] . . . ." Laneve's Motion at 3. He asserts that the facts set forth in the SAC, as they relate to him, "merely amount to disagreements" with his clinical decisions, and therefore are insufficient to state an Eighth Amendment claim. Id. at 1-2. In his Response, Sim requests that the Court deny Laneve's Motion. He asserts that Laneve failed to follow "the proper protocol of a surgeon assistant to his surgeon" in that he failed to inform Dr. Kleinhans as to the type of surgery he was to perform to "correct the problem by redoing the screws." Response at 3-4. Sim also contends that Laneve failed to order pain medication or "any kind of therapy" for Sim's shoulder after the second surgery on December 2, 2013.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendants.

The Eleventh Circuit has explained the requirements for an Eighth Amendment

violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[4] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[5] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[6]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351.

---

[4] Farmer v. Brennan, 511 U.S. 825 (1994).

[5] Hudson v. McMillian, 503 U.S. 1 (1992).

[6] Wilson v. Seiter, 501 U.S. 294 (1991).

6

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737 (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245); Lane, 835 F.3d at 1308 (setting forth the three components) (citing Farrow, 320 F.3d at 1245).

> In Estelle[7], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott[8] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor,[9] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46.

According to Sim, Laneve examined him after his first surgery and ordered an x-ray of his shoulder. Laneve reviewed the x-ray and determined that another surgery was

---

[7] Estelle v. Gamble, 429 U.S. 97 (1976).

[8] McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

[9] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

7

necessary. Sim does not allege that Laneve told him that the surgery would consist of replacing the dislodged screws. Approximately two months later, Dr. Kleinhans performed the second surgery at Jacksonville's Memorial Hospital where he removed a plate from Sim's shoulder. Sim does not state whether anything else was done to the shoulder. Jacksonville's Memorial Hospital discharged Sim without any pain medications or "any kind of therapy" for his shoulder.

On these facts, Sim asserts that Laneve was deliberately indifferent because Laneve delayed his receipt of the second surgery. However, Sim does not allege any facts to support his conclusion that Laneve was responsible for any delay of his second surgery. Nor does he allege any facts suggesting that had Laneve acted differently, the surgery could have occurred sooner. As such, Sim's assertion is conclusory and speculative and not due to be credited. Even assuming Laneve did delay Sim's second surgery, Sim fails to allege that the delay exacerbated his medical condition or that the delay was unjustified. See Taylor v. Adams, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (recognizing that a delay of treatment for a serious condition can rise to the level of deliberate indifference "where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified"); Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187, 1187–89 (11th Cir. 1994) overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

Next, Sim asserts that Laneve was deliberately indifferent because Laneve failed to inform Dr. Kleinhans about the proper surgery to perform, and to order pain medications and therapy for his shoulder. Notably, he asserts no facts supporting even an inference

8

that it was incumbent on Laneve, a physician's assistant, to advise Dr. Kleinhans, a surgeon, as to the precise procedure to perform. Upon review, the Court determines that these complaints are nothing more than Sim's own opinion that his medical treatment should have been different. However, "a simple difference in medical opinion" does not rise to the level deliberate indifference. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Indeed, the United States Supreme Court has stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most[,] it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendant] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate's] diagnosis or course of treatment support a claim of cruel and unusual punishment."). Moreover, the Eleventh Circuit recently reaffirmed that "medical treatment violates the Constitution only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Dang by & through Dang v. Sheriff, Seminole Cty. Florida, No. 15-14842, 2017 WL 1856069, at *4 (11th Cir. May 9, 2017) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Sim has not alleged facts sufficient to state a claim under the Eighth Amendment as to Laneve in that he has not shown that Laneve was deliberately indifferent to his serious medical needs. Therefore, the Court will grant Laneve's Motion as to Sim's Eighth Amendment claim against him, and dismiss the complaint. Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Laneve's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 38) is **GRANTED**, and Kirk Laneve is **DISMISSED** as a defendant in this action.

2. Because there are no remaining defendants in this action, this action is **DISMISSED**.

3. The Clerk of the Court is directed to terminate any pending motions, enter judgment dismissing this case, and close this file.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of May, 2017.

MARCIA MORALES HOWARD
United States District Judge

sflc

c: Stanley L. Sim, Jr.
   Counsel of Record